IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 00-CR-10-TCK-1 |
| NATHANIEL HELM, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Before the Court is the Defendant Nathaniel Helm's ("Helm") Motion for Reduction of Sentence filed pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 101). On September 21, 2020, the Government filed its Response in Opposition (Doc. 103). Helm filed a Reply on September 28, 2020 (Doc. 104).

Helm seeks a reduction in sentence based on "extraordinary and compelling circumstances" in light of the significant sentencing disparity created by the First Step Act of 2018, and a combination of factors which warrant relief. The Government urges the Court to deny Helm's § 3582(c)(1)(A) motion based on the contention that Helm is not eligible for compassionate release. *Id.* Specifically, the Government argues that the First Step Act did not change the requirements for granting compassionate release, Helm's claims do not constitute "extraordinary and compelling reasons" warranting relief, and that Helm still poses a danger to the safety of the community (Doc. 103).

**I. Background**

In 2000, Helm conspired with Thomas Weaver to commit a string of armed robberies throughout Tulsa. (PSR at ¶15). After an indictment charged him with multiple substantive robberies, § 924(c) violations arising from those robberies, and conspiracy to commit other

robberies, Helm pleaded guilty to two of the § 924(c) violations, pursuant to a plea agreement under which the government agreed to dismiss the remaining counts, including another § 924(c) violation. (Doc. 26 at 14, 17). Applying the then-applicable statutory minimums, this Court sentenced Helm to 32 years of imprisonment, based on consecutive terms of 7 years for the first § 924(c) conviction, and 25 years for the second. (Doc. 52). The Tenth Circuit affirmed Helm's convictions. *United States v. Helm*, 232 F.3d 902 (Table) (10th Cir. 2000) (unpublished). In 2016, Helm filed a § 2255 motion based on *Johnson v. United States*, 576 U.S. 591 (2015); this Court dismissed it as waived under Helm's plea agreement. (See Docs. 86, 95).

While incarcerated, Helm has repeatedly committed serious infractions. Helm is currently serving his sentence at USP Tucson, a high-security federal prison for male inmates. His discipline record shows that he has been sanctioned for mutual combat, use and possession of drugs (Morphine, Suboxone), possession of weapons, fighting and destruction of property. See Government's Response, Exhibit 1, Inmate Profile at 5-18. According to the BOP website, Helm is scheduled to be released March 8, 2029.

The Bureau of Prisons deemed Helm ineligible for compassionate release. Helm requested compassionate release from the warden of his facility on March 31, 2020. Id. at 23. After considering Helm's request, the warden at his facility declined to file a motion for compassionate release on his behalf, because he listed none of the recognized criteria for compassionate release.

**II. Applicable Law**

In December 2018, Congress enacted the First Step Act ("FSA") which modified §3582(c)(1) of Title 18 of the United States Code to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) now reads:

2

>   (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—
>
>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction; or
>
>   (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under § 3142(g);
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added). [1]

If the Court finds the exhaustion requirements are met and extraordinary and compelling circumstances are present, the Court may reduce a term of imprisonment "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Further, the statute requires the Court "to consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." *Id.*; See also, *United States v. Maumau*, No. 20-4056 at 7 (10th Cir. Apr. 1, 2021).

---

[1] The U.S. Sentencing Commission published data on resentencings pursuant to Section 404 of the First Step Act of 2018. Under Section 404, defendants sentenced before the Fair Sentencing Act of 2010 are eligible for a retroactive sentence reduction. Through June 30, 2020, the Commission found that 3,363 offenders were granted a sentence reduction. Of the 3,363 offenders granted sentence reduction 65.6 % were assigned to the highest Criminal History Category (IV), 56.3 % were Career Offenders, and 44.5 % received a weapon-related sentencing enhancement. United States Sentencing Commission, October 19, 2020.

**A. Exhaustion Requirement**

Although there has been a significant split among district courts on whether the exhaustion requirement of § 3582(c)(1)(A) is jurisdictional and/or excusable, two Courts of Appeals have recently weighed in on the subject. In *United States v. Raia*, the Third Circuit concluded that failure to comply with the statute's exhaustion requirement "presents a glaring roadblock foreclosing compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

More recently, the Sixth Circuit found that a prisoner's failure to exhaust his administrative remedies did not deprive the court of subject matter jurisdiction; however, the court concluded that the exhaustion requirement "looks like a claim-processing rule, and in operation it acts like one." *United States v. Alam*, __F.3d__, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020). In so holding, the court noted:

> Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition. If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must "fully exhaust [] all administrative rights to appeal" with the prison or wait 30 days after his first request to the prison.

18 U.S.C. § 3582(c)(1)(A). *Id.*

**B. Extraordinary and Compelling Circumstances**

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Maumau*, No. 20-4056 at 11 (10th Cir. Apr. 1, 2021); *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019). The applicable policy statement of the Sentencing Commission can be found at U.S.S.G. § 1B1.13. The commentary to this section states:

4

1. Extraordinary and Compelling Reasons. –Provided the defendant meets the requirements of subdivision (2) [not a danger to society], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant. –

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. –The defendant (i) is at least 65 years old; (ii) is experiencing serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances. –

(i) The death or incapacitation of a caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

However, the Tenth Circuit has recently clarified this position and held that § 1B1.3 is not binding on district courts "when a defendant files a motion to reduce sentence under § 3582(c)(1)(A) directly with the district court." *Id.*

### C. Sentencing Commission Policy and 18 U.S.C. § 3553(a) Factors

Section 3582(c)(1)(A) allows for a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds

that– (i) extraordinary and compelling reasons warrant such a reduction; … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

The § 3553(a) "factors include, among other things, '(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as '(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant.'" *United States v. Rodriguez-Orejuela*, 2020 WL 2050434, at \*4 (S.D. Fla. Apr. 28, 2020) (quoting 18 U.S.C. § 3553(a)).

Under § 1B1.13 of the U.S. Sentencing Guidelines, the Court may reduce a term of imprisonment after consideration of the § 3553(a) factors, if the Court determines that:

(1) (A) extraordinary and compelling reasons warrant the reduction;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(1)-(3).

### III. A Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) is not Warranted

#### A. Helm Has Met the Exhaustion Requirements of § 3582(c)(1)(A)

As noted *supra*, on March 31, 2020, Helm submitted a written request to the warden requesting a compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i). The warden declined to file a motion for compassionate release on Helm's behalf. Therefore, Helm has fully exhausted his administrative appeals and has met the exhaustion requirements under 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Circumstances Justify a Reduction in Sentence

In considering Helm's motion, the Court has reviewed the three-part test adopted by the Tenth Circuit in *United States v. Maumau*, No. 20-4056 at 7 (10th Cir. Apr. 1, 2021) (citing *United States v. Jones,* 980 F.3d 1098, 1107 (6th Cir. 2020)). Step one requires the Court to determine at its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. Step two requires that the Court find whether such reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. Step three requires the Court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction authorized by steps one and two is warranted under the particular circumstances of the case. However, because the policy statements of the Sentencing Commission have not been updated since enactment of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to file motions for compassionate release directly with the Court, the existing policy statements are not applicable to motions filed directly by defendants. *Id*. at 12. Further, when any of the three prerequisite steps are lacking, the Court may deny a compassionate release motion and does not need to address the other steps. The Court must address all three steps when granting such motion. *Id.* at 13 n.4. (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)). See also *United States v. McGee*, No. 20-5047 (10th Cir. Mar. 29, 2021).

The extraordinary and compelling circumstances presented in the instant case relate in part to the significant sentencing disparity created by another provision of the First Step Act–the changes to the penalty provisions under 18 U.S.C. § 924(c)(1)(C). Section 403 of the First Step Act amended § 924(c)(1)(C) to now read:

(C) In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall–

(i) be sentenced to a term of imprisonment of not less than 25 years.

18 U.S.C. § 924(c)(1)(C).

Prior to the enactment of the First Step Act, an enhanced, statutory minimum penalty was provided for any § 924(c) conviction after the first, regardless of whether the subsequent conviction was a part of the instant offense. Such is Helm's case. Helm received a term of only 84 months as to Count 4, but, because he was convicted of more than one violation under § 924(c), he received a mandatory, consecutive term of 300 months as to Count 6 as was considered lawful at the time. However, Helm was convicted of both charges at the same time. As such, the mandatory enhancement resulting in a 300-month sentence as to Count 6 would not have been applicable if Helm were sentenced today. Recognizing the disparity created by the First Step Act's alterations to § 924(c), many district courts have granted reductions to defendants with "stacked" 924(c) convictions.

### C. A Reduction in Sentence is not Warranted After Consideration of the 18 U.S.C. § 3553(a) Factors and Sentencing Guidelines Policy

Having established that Helm has exhausted his administrative appeal, and that extraordinary and compelling circumstances exist, the Court must consider the factors under 18 U.S.C. § 3553(a) and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted.

Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." *Id*. Indeed, the Court continued, "Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not

greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*. at 1242.[2] See e.g. *United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) (granting a sentence reduction under § 3582(c) to a defendant who ran a drug-trafficking organization, given that "[the defendant], in the face of a life sentence, assumed a positive outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

Looking to the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1), his conduct while incarcerated demonstrates the danger he continues to pose to the community, and warrants denial of his motion. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); *United States v. Maumau*, No. 20-4056 at 7 (10th Cir. Apr. 1, 2021) (citing *United States v. Jones,* 980 F.3d 1098, 1107 (6th Cir. 2020)).  Those factors demonstrate that Helm remains a significant danger to the community.

---

[2] "In addition, evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training…or other correctional treatment in the most effective manner." §§3553(a)(2)(B)-(D); see *McMannus,* 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing…deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct"). *Id*.

First, Helm's offenses of conviction involved a series of armed robberies of escalating severity; at the time of his arrest, he and his co-defendant were planning to rob an armored car by shooting the guard in the leg. (PSR at ¶¶ 12-15).

Next, although Helm was only 17 at time of his arrest, he had already accrued an impressive criminal history, with a total of ten criminal history points. (PSR at ¶¶ 25-32). His first contact with police came at the age of 13, when he robbed a victim by force. (Id. at ¶ 31). By 14, he had already been arrested for two assaults and a weapon possession. He pointed a gun at a victim on school grounds while making a life-threatening remark, and then shot the gun into the ground. (Id. at ¶¶ 26-27). At 17, he was arrested for assault & battery. (Id. at ¶ 25). In addition to his arrests, at the age of 14, Helm was charged as a juvenile in a Conspiracy to Commit Murder, agreeing to beat the victim and run her over with a car to make it look like a hit and run accident. (Id. at ¶ 33). Although Helm was not certified as an adult and denied being present at the murder, he admitted to his knowledge of and participation in the conspiracy, and accompanied another juvenile to Wal-Mart to buy the baseball bat used in the offense. (Id.). A study completed in 1996 "determined that Helm had developed a pattern of antisocial delinquent behavior and had aligned himself with an antisocial group of peers." (Id. at ¶ 36). Before his arrest in 2000, Helm was placed in juvenile detention on seven separate occasions. (Id. at ¶ 37). Helm began using drugs at 13, and admitted doing so daily at the time of his presentence interview. (Id. at ¶ 43).

Finally, and most importantly, Helm's disciplinary history while incarcerated contradicts his claims that he has rehabilitated himself during his nearly 20 years in the Bureau of Prisons. His first infraction took place barely three months after sentencing, and his disciplinary violations continued at the rate of multiple incidents each year over the course of his incarceration, including multiple sanctions for possessing intoxicants, possession and use of drugs or alcohol, fighting,

possessing dangerous weapons, and destroying property. (Exhibit 1 at 5-18). Significantly, Helm's inmate profile shows that he declined to participate in the Bureau of Prisons Residential Drug Treatment program in August of 2015, and has since committed at least four disciplinary infractions involving drugs. (Id. at 1, 5, 6, 7). In short, Helm's remarkable disciplinary history, which he does not address in his motion, wholly contradicts his claims that "he has committed himself to proving his rehabilitation," and suggests that he remains a danger to the community.

### IV. CONCLUSION

Based on the foregoing, the Court denies Helm's Motion for Compassionate Release. (Doc. 101).

**IT IS SO ORDERED this 6th day of May 2021.**

TERENCE C. KERN
United States District Judge